MARION E. CROUCH and Another, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 15784.

Court of Claims, March 16, 1925.

**State — claims against State — claim for value of property appropriated by State for Barge canal terminal — railroad company in 1890 acquired title in fee to property by condemnation proceedings for use and purposes of said company — premises used for railroad purposes until 1916 when State appropriated fee title for Barge canal terminal purposes — Legislature had power to authorize taking of fee in property pursuant to General Railroad Law (Laws of 1850, chap. 140, as amd. by Laws of 1857, chap. 444) — fee of claimant's property passed to railroad company by condemnation proceedings — claim dismissed.**

A claim against the State of New York for the value of land appropriated by the State for a Barge canal terminal should be dismissed, where it appears that

title in fee to the property in question was acquired by a railroad company in condemnation proceedings in 1890 pursuant to the provisions of the General Railroad Law (Laws of 1850, chap. 140, as amd. by Laws of 1857, chap. 444), for the use and purposes of the said railroad company, and that the premises were used continually for railroad purposes by one railroad company or another until 1916, when the State of New York duly appropriated the fee title of the said property for Barge canal terminal purposes, since no vestige of title or reversionary interest remains in claimant for the reason that the fee title of claimant's property passed to the railroad company by the condemnation proceedings had pursuant to the aforesaid provisions of the General Railroad Law as amended.

Moreover, the Legislature had power to authorize the railroad company to acquire the title in fee of the said property which it required for roadway and for necessary buildings, depots and freight grounds.

CLAIM for value of land appropriated by the State of New York for a Barge canal terminal.

*Benton, Lewis, McKay & Bown,* for the claimants.

*Albert Ottinger, Attorney-General [Edward J. Mone, Deputy Attorney-General,* of counsel], for the State of New York.

ACKERSON, P. J.:

The claim herein is for the value of land appropriated by the State for a Barge canal terminal at Rochester, N. Y., pursuant to chapter 746 of the Laws of 1911.

The parties have stipulated, with the consent of the court, to submit the question of the State's liability to the court upon an agreed statement of facts. Upon the determination of that question, if adverse to the State, the claimants will submit their proofs of damages.

The facts in the case are, briefly, as follows: In the month of March, 1890, the claimant Frank P. Crouch was the owner of the fee of the premises in question. In that month the Rochester and Honeoye Valley Railway Company, proceeding under and in pursuance of the provisions of chapter 140 of the Laws of 1850 and the acts amendatory thereof and supplemental thereto, known as the General Railroad Law, instituted proceedings for the condemnation of the premises in question for the purposes of said railway company. A decision and order of the Supreme Court was duly made and entered in said proceedings on December 4, 1890, whereby and in pursuance of which the said railway company duly paid the said Frank P. Crouch the sum of $19,990.32, the sum of money directed by said decision and order to be paid to him by said railway company as compensation for his property so taken " for the use and purposes of said railway company and for the fee thereof."

The said property thereafter was used continually for railroad purposes, was transferred from one railroad company to another,

and on December 12, 1916, was held, occupied and used for railroad purposes by the Lehigh Valley Railroad Company.

On said last-mentioned date the State of New York pursuant to law, duly appropriated the fee title of said property for Barge canal terminal purposes. A copy of the map and notice by which said property was appropriated by the State was never served on either of the claimants and they had no actual knowledge of the appropriation until the State took possession of the premises on or about the 1st day of July, 1917.

On or about November 7, 1901, the said claimant Frank P. Crouch quitclaimed and conveyed to the claimant Marion E. Crouch all his right, title and interest, including any reversionary interest which he had in and to the premises in question, and has likewise duly assigned to said Marion E. Crouch all his right, title and interest in and to the damages demanded in the claim herein.

The above-mentioned corporations are still in existence.

The said Rochester and Honeoye Valley Railway Company in its petition in the condemnation proceedings to acquire the lands in question alleged " that the route of its road as located, crosses all of said parcels and the same and *each of them* are required for the purposes of constructing and operating the said railroad and for the necessary stations, depots, switches and other terminal facilities required for its business."

The claimants here contend that the condemnation and taking of the premises in question by the Rochester and Honeoye Valley Railway Company in 1890 pursuant to the General Railroad Law was for the use of the lands exclusively for railroad purposes and when the premises ceased to be used for railroad purposes they reverted by law to the original owners. Under claimants' theory the railroad company only acquired an easement in the property which would terminate with the corporate existence of the company or whenever the use of the premises for railroad purposes was discontinued.

They contend, therefore, that when the State appropriated the premises for the purposes of the Barge canal, the use for which the property was originally condemned was at an end, the easement terminated, and the property reverted to Frank P. Crouch, the owner of the fee, or to his grantee. They allege that the value of the property actually appropriated at the date of the appropriation was $32,670 and that the consequential damages to the remainder of claimants' land caused by the appropriation of the parcel in question was $8,167.50, making the total damages $40,837.50, for which amount an award is demanded against the State.

The claimants in support of their theory herein call attention to the language of section 18 of chapter 140 of the Laws of 1850, known as the General Railroad Law, which has reference to the final order in condemnation proceedings such as were taken, they allege, to condemn the property in question. This section reads as follows:

" Sec. 18. A certified copy of the order * * * shall be recorded at full length in the clerk's office of the county in which the land described is situated; and thereupon * * * the company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, by virtue of this or any other act; and all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate, during the corporate existence of the company as aforesaid. All real estate acquired by any company under and pursuant to the provisions of this act, for the purposes of its incorporation, shall be deemed to be acquired for public use."

They also further support this contention by the citation of many well-known authorities which establish the general rule in this country " that railway companies in taking lands acquire no absolute fee; that property so taken is taken for a public use within the meaning of the constitutions of this State and of the United States; and if the public use is subsequently discontinued or abandoned, the public easement is extinguished and the possession of the land reverts to the owner of the fee free from any rights in the public."

The State on the other hand claims that no interest whatever in the land in question remained in Frank P. Crouch after the taking of the same by the Rochester and Honeoye Valley Railway Company in 1890 by the condemnation proceedings aforesaid. It bases its claim in this regard upon the fact that the final order made by the Supreme Court in that proceeding purports in so many words to convey from said Frank P. Crouch to the said railway company the fee title of the property in question. It is evident that all the parties to that transaction at that time believed that the fee was transferred. Frank P. Crouch thought that he was being paid for the fee when he received the substantial sum of about $20,000 for about two acres on this island. Those representing the railway company believed they were paying for the fee. That must have been the intent and purpose of both parties because that was the order of the court, and it does not appear that anybody questioned the court's power to make such an order under the law.

The fee of claimants' property in question was, therefore, then and there transferred to the Rochester and Honeoye Valley Railway Company unless it was beyond the power of the court to make such an order.

The claimants contend that there was no authority in law for inserting in this final order the language " *and for the fee thereof;* " that the court had no power to make such an order and that the language purporting to take the fee is " surplusage."

We cannot agree with the learned counsel for the claimants in this regard. While it is true that the general policy of our law has been and is that land, taken under condemnation proceedings for a railroad is taken for a public use and that the railroad does not take the fee but simply an easement to be contemporaneous with the existence of the corporation or with the use of the land for railroad purposes, yet there does seem to be some exceptions to that rule.

All the authorities on the subject agree that where there is no constitutional restriction, as here, to affect the situation in any way, the Legislature has power to authorize the taking of the fee in a proceeding similar to the one under consideration.

In the case of *Hudson & Manhattan R. R. Co* v. *Wendel* (193 N. Y. 166) the Court of Appeals held that inasmuch as the provisions of the Rapid Transit Act did not expressly direct that the absolute fee of real property may or shall be taken, therefore, an unqualified possession of such real property for the purposes of the corporation during the continuance of the corporate existence would answer the purposes of the act without taking the fee.

But the court recognized the power of the Legislature to authorize the fee to be taken for a public use in the following language: " In the absence of constitutional restrictions the Legislature in the exercise of its power to authorize the taking of private property for public use is the exclusive judge of the extent, degree and quality of interest which are proper to be taken. It rests wholly in the wisdom of the Legislature to say what estate shall be taken. In construing the statutes, however, it will not be implied that a greater interest or estate can be taken than is absolutely necessary to satisfy its language and object or than the Constitution allows. And although a taking of the fee may be authorized where necessary in the absence of express words the statute will not be so construed where its purposes will be satisfied by the taking of an easement. * * * It is within the province of the Legislature to determine the estate or extent of interest that may be taken whether an estate for years, for life, a mere easement, a fee absolute or conditional. And where it has prescribed the interest to be taken

no other interest can be taken than that specified. The courts enforce a strict construction, and where the quantity and interest to be taken are not definitely set forth by the Legislature only such an estate and quantity may be taken as are necessary to answer the purpose in view. * * * The State may take or authorize the taking of the fee of land or a mere easement at its discretion, and the question as to whether it authorized the taking of a fee or only an easement is purely one of construction for the courts to be determined in view of the language used in the act giving the authority to take it and of the purposes for which it was taken." It seems to be settled law, therefore, that it is within the discretion of the Legislature to say whether a railroad corporation in exercising the power of eminent domain to secure land for its purposes may or may not acquire the fee title to such lands.

In the case before us, as we have seen, an attempt, at least, was made to transfer the fee from the owner to the railroad company. The Supreme Court in the condemnation proceedings in question so ordered and it only remains for us to determine whether the statute under which said proceedings were instituted was sufficient to authorize the court to make such an order.

As we have already pointed out, according to the petition in the aforementioned condemnation proceedings which is attached to and made a part of the stipulation of facts herein, the property in question together with other property on the " island " referred to in its vicinity was acquired by the said railway company " for the purpose of constructing and operating said railroad and for the necessary stations, depots, switches and other terminal facilities required for its business."

The Deputy Attorney-General in this connection calls to our attention the case of *Rochester & Honeoye Valley Railroad Co.* v. *City of Rochester* (17 App. Div. 257; mod., 163 N. Y. 608) in which the fact is established, also, that the property in question was used for the purposes set forth in the petition as aforesaid.

But however that may be, the condemnation proceedings were brought, as clearly appears by the unmistakable language of the petition, to secure each parcel of property mentioned therein not only " for the purpose of constructing and operating said railroad " over it but also " for the necessary stations, depots, switches and other terminal facilities required for its business." The State contends that such being the nature of the proceedings and such being the objects for which the railway company desired to acquire the property, the provision in the final order of the Supreme Court to the effect that the compensation therein ordered to be made by the petitioner to Frank P. Crouch was for property taken " for

the use and purposes of said railroad company and for the fee thereof," was sanctioned and fully justified by the language of the statute under which the property was taken. We believe that is true. The language of the statute is so clear as to place the matter, in our judgment, beyond all reasonable controversy. Chapter 140 of the Laws of 1850, known as the General Railroad Law, was amended in 1854 and 1857 in reference to railroads acquiring the fee of property taken for their purposes. Such amendments formed part of the law under which it is stipulated the property mentioned in the claim herein was taken.

The amendment of 1854, being chapter 282 of the laws of that year, provides as follows: " All lands acquired by any railroad company by appraisal, for passenger and freight depots, shall be held by such company in fee." (§ 17.)

The amendment made by chapter 444 of the Laws of 1857, however, was much broader in its provisions. The language of that act is as follows: " Any railroad corporation in this State may acquire the title in fee, by the special proceedings, hereinbefore mentioned, to any land which it may require *for roadway* and *for necessary buildings, depots and freight grounds.*" (§ 2.) An examination of that act as published in the Session Laws of 1857 discloses that the description of the act at the beginning is as follows: " An Act further to amend the act entitled ' An act to authorize the formation of Railroad Corporations and to regulate the same,' passed April second, eighteen hundred and fifty." Section 1 of the act then provides that the mortgagee of any railroad may purchase the same at any sale under the mortgage. Section 2 first provides that whenever there shall be one or more of the estates, enumerated in that portion of the Revised Statutes entitled " Of the creation and division of estates " in any land taken by a railroad company for its purposes that " Such company may acquire such estate and land by means of *the special proceedings authorized by the act hereby amended.*" After providing what the petition shall contain and the steps following the petition to acquire such estates, the section closes in the language as quoted above concerning the taking of a fee. It is clear, therefore, that when the act declared that the fee might be taken " by the special proceedings hereinbefore mentioned " it referred to the special proceeding authorized by the original act of 1850. The learned counsel for the claimant have been diligent in citing many authorities to the court to sustain their contention herein but they have cited no case which holds that this language in the act of 1857 does not mean just what it says or that the Legislature did not have the power to pass such an act.

The conclusion, therefore, seems inevitable that when the land mentioned in the claim herein was taken from its owner Frank P. Crouch in 1890 under the condemnation proceedings instituted by the Rochester and Honeoye Valley Railway Company, the fee title to the same passed to said company and no vestige of title or reversionary interest remained in said Crouch. It matters not whether said land was taken for roadway or buildings or yards the same rule under said statute applies to all or either. The claim herein must, therefore, be dismissed.

SMITH, J., concurs.